UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FRANK ANTHONY ZACCONE,

    Plaintiff,

v.                                           Case No: 2:15-cv-287-FtM-38CM

FORD MOTOR COMPANY,

    Defendant.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Defendant Ford Motor Company's Motion for Final Summary Judgment (Doc. 86) and Amended Motion for Final Summary Judgment (Doc. 92). Plaintiff Frank Anthony Zaccone, appearing *pro se*, filed responses in opposition to both motions. (Doc. 96; Doc. 102). For the following reasons, the Court grants Ford's motions.

## BACKGROUND

This is a product liability case. Zaccone sues Ford for an allegedly defective airbag system, roof structure, and rollover prevention/protection system in his late-wife's 2006 Ford Escape.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

It all started on May 6, 2013, when Zaccone and his wife, Judy Hanna, embarked on a cross-country road trip.[2] Zaccone began the day around sunrise to prepare for the trip. He packed suitcases, mowed the lawn, cleaned the house, and stopped at the bank. He also loaded the Escape, which Hanna bought new seven years earlier, for the trip. Finishing around noon, Hanna and Zaccone popped a bottle of champagne to celebrate their seven-year wedding anniversary. After a couple of glasses each, Zaccone drank a can or two of beer and Hanna drank a glass or two of wine. (Doc. 86-5 at 20, 73:10-74:22). Around five o'clock Zaccone and Hanna started their trip – Zaccone drove and Hanna rode in the front passenger seat.

The couple stopped in Miami, where Zaccone drank about two glasses of Kahlua with milk and Hanna drank about two glasses of wine. (Doc. 86-5 at 23, 81:24-82:22). From there, Zaccone drove west to Naples, Florida. Zaccone and Hanna stopped again in Naples for "a couple of drinks." (Doc. 86-5 at 23, 84:1-23). The couple then continued driving north until they reached Punta Gorda, Florida around 8:15 p.m. where everything turned for the worse.

According to Zaccone, he and Hanna were fighting because he wanted to find a hotel for the night, but Hanna wanted to continuing travel north on Interstate 75 – to Tampa. (Doc. 86-5 at 24, 86:20-88:17). Hanna was allegedly "screaming" at Zaccone not to get off the highway. (Doc. 86-5 at 24, 88:7-10, 89:15-18). Having "a real bad feeling," Zaccone said to his wife, "I really don't like the way this is going, Judy, I think we're going to turn around and go back home." (Doc. 86-5 at 24, 89:15-24).

---

[2] The facts leading up to the car accident are based on Zaccone's deposition testimony and are viewed in a light most favorable to him. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Zaccone eventually made a U-turn through the highway's grassy median to head home. (Doc. 86-5 at 24-25, 89:25-90:16). The U-turn placed the Escape in the left lane of the southbound traffic. As Zaccone was accelerating, another car passed the Escape on the right. He eventually caught up to that other car. (Doc. 86-5 at 25, 90:20-94:12).

At some point either immediately before or after the U-turn, Zaccone suggested to his wife that they "ought to like just separate for a while." (Doc. 86-5 at 29, 107:24-108:11). According to Zaccone, Hanna was displeased with his comment about separating and/or his decision to return home – so she grabbed the steering wheel and jerked it left. (Doc. 86-5 at 26, 94:12-95:4, 107:9-108:16, 110:16-112:5). Zaccone steered the car to the right then the left in an attempt to keep the car on the road. (Doc. 86-5 at 26, 95:4-96:8). But this caused the Escape to fishtail at 74 and 82 miles per hour. (Doc. 86-5 at 26, 95:4-97:3; Doc. 86-6 at 11). Zaccone attempted to correct and slow down the Escape to no avail – he lost control.

The Escape rolled clockwise side-over-side at least three times for 300 feet and landed on its tires in the median. (Doc. 86-5 at 27, 100:10-101:15; Doc. 86-6 at 6, 33). The Escape had two front airbags, neither of which deployed during the rollover. It did not have side-impact or side curtain airbags. (Doc. 86-3 at ¶ 4). Although Zaccone and Hanna were wearing seatbelts, only Zaccone survived the accident. He suffered rib fractures, ear laceration, and lung bruising. (Doc. 86 at ¶ 5).

Zaccone now brings this suit against Ford, claiming the Escape's airbag system, roof structure, and rollover protection system were defective. (Doc. 90). His causes of action are negligence, strict liability manufacturing defect, strict liability design defect,

strict liability failure to warn, and negligent failure to warn. (Doc. 90). Ford now moves for summary judgment.[3] (Doc. 86; Doc. 92).

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* When deciding a motion for summary judgment, the court views all evidence and draws all reasonable inferences in the non-moving party's favor. *See Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010); *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003) (citation omitted).

The moving party bears the initial burden of showing that there are no genuine disputes of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). This burden is satisfied by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party [must] go beyond the pleadings and by h[is] own

---

[3] After Ford filed its first motion for summary judgment (Doc. 86), Zaccone filed, with the Court's leave, a Fourth Amended Complaint (Doc. 81). Ford then filed an amended motion for summary judgment. (Doc. 92). The Court considers both motions, as well as Zaccone's responses.

4

affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted). The non-moving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 584-86 (1986) (stating the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

Moreover, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Walker v. Yamaha Motor Co., Ltd.*, No.6:13-cv-1546-ORL-37GJK, 2016 WL 7325518, at *11 (M.D. Fla. Feb. 16, 2016) (stating "[a]s to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the nonmoving party's case; or (2) the movant may provide affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial" (internal quotations and citations omitted)). This makes sense because "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. Finally, the Court is mindful that Zaccone is incarcerated[4] and proceeding *pro se* in this case. *See generally Erickson*

---

[4] Although tangential to this case, a jury found Zaccone guilty of driving under the influence manslaughter in connection with the subject car accident. (Doc. 32).

*v. Pardus,* 477 U.S. 242, 94 (2007) (stating, in part, that "[a] document filed *pro se* is to be liberally construed").

## DISCUSSION

Zaccone claims that Ford is strictly liable and negligent for (1) defectively designing and manufacturing the Escape's airbag sensors, roof structure, and rollover prevention/protection system; and (2) failing to warn of these alleged defects. (Doc. 90). Ford argues, however, that Zaccone has no evidence of negligence or a defective product, and thus it is entitled to summary judgment.

Products can suffer three types of defects: design, manufacturing, and inadequate warning. See *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999). An entity can be liable for each type of defect under theories of strict liability and negligence. Both theories share the common elements of a defective product and causation. See *O'Bryan v. Ford Motor Co.*, 18 F. Supp. 3d 1361, 1366-67 (S.D. Fla. 2014) ("For claims in negligence and strict liability, a plaintiff must prove that the product was defective . . . [because i]n general, proof of a defect determines a breach of a duty under a negligence theory and the presence of an unreasonably dangerous condition under a strict liability theory."); *Cassisi v. Maytag Co.*, 393 So. 2d 1140, 1143 (Fla. 1st DCA 1981) (stating, "to prevail on negligence or strict liability claims, a plaintiff must show that a defect was present in the product, it caused the injuries complained of, and it existed at the time the manufacturer parted possession with the product"). Here, Ford contests both common elements, arguing that Zaccone has no evidence to show that the Escape was defective

at the time of the accident, and that any alleged defect or associated failure to warn was the proximate cause of his injuries.[5] (Doc. 90 at 8). The Court agrees.

The record is devoid of evidence of any defect. Zaccone has no expert evidence to support his allegations, even though the Court twice extended the expert disclosure and discovery deadlines to accommodate his *pro se* status and incarceration. (Doc. 80; Doc. 88); *see also Savage v. Danek Med., Inc.*, 31 F. Supp. 2d 980, 983 (M.D. Fla. 1999) ("A defect must be proven by expert testimony" (citing *Worsham v. A.H. Robins Co.,* 734 F.2d 676, 687 n.8 (11th Cir. 1984) ("expert testimony is often required to establish defective design of a product") (other citation omitted)). And, although the Escape has been in Ford's possession for nearly one year, no expert has inspected the car on Zaccone's behalf. (Doc. 56 (ordering Ford to preserve and maintain the Escape throughout the pendency of this litigation)). At most, Zaccone points to photographs of the Escape post-accident and opines that there was a sufficient near-frontal collision to trip the airbag sensors. But Zaccone is not qualified to make that determination. He also cannot rely on the mere non-deployment of the Escape's front airbags and the occurrence of the rollover crash to establish a defect. *See, e.g., Husky Indust., Inc. v. Black*, 434 So. 2d 988, 995 n.8 (Fla. 4th DCA 1983) (stating "[t]he mere showing" that product exploded was not sufficient to prove that the product was defective).

---

[5] Because Ford only contests the common elements, the Court will limit its inquiry accordingly. "Generally, however, a plaintiff asserting a products liability claim must also establish the distinct elements under the distinct theory – each of which has its own standard." *Walker*, 2016 WL 7325518, at *12.

7

Zaccone's answers to interrogatories (Doc. 86-2 at 5-6) and deposition testimony fare no better in offering support to his defective product allegations. For instance, Zaccone testified,

> A     But this is how – what perpetuated this [case] to begin with is I'm almost sure [my former attorney in Boca] told me that he was either getting somebody, or maybe he talked over the phone, and he described the situation and they said oh, it was probably the sensors. He may have called somebody.
> Q     Okay, but you don't know?
> A     No.
> Q     All right, and you have no information yourself about an engineer coming and inspecting the vehicle.
> A     No, ma'am.

(Doc. 86-5 at 48, 183:3-14). He also testified to the Escape "driving fine" on the night of the accident and that nothing with the Escape precipitated the rollover sequence. (Doc. 86-5 at 110:16-111:12).

In sum, Zaccone falls short of showing a defect in the Escape at the time of the accident. *See Jespen v. Lornamead, Inc.*, No. 8:12-cv-1811, 2013 WL 5944189, at *1 (M.D. Fla. Nov. 6, 2013) (granting defendant summary judgment because plaintiff produced no admissible scientific or medical evidence to support his allegations of negligence or product liability); *see also Anderson*, 477 U.S. at 252 (stating "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to defeat summary judgment); *Celotex*, 477 U.S. at 322. He simply has no competent evidence to prove his theory of a defect. But even if he could clear that hurdle, he has no evidence (medical or otherwise) that the alleged defects or a failure to warn caused his injuries.

To the extent Zaccone argues that he is entitled to the inference of a defect, that avenue is not available. (Doc. 96). Under Florida law,[6] a defect and causation may be inferred from evidence that the product malfunctioned during normal operation. *See Cassisi,* 396 So. 2d at 1148. The inference is most applicable "in cases where the product in question was so badly damaged by a malfunction that it makes it impossible for the plaintiff to point to the exact citation that caused the accident with specificity." *O'Bryan*, 18 F. Supp. 3d at 1369 (citation omitted). That is not the case here because the Escape was neither destroyed in the crash nor unavailable for inspection. And, as explained above, there is no indication that the Escape was defective, let alone malfunctioned. In fact, the record suggests the opposite.

Alan Moore, an accident reconstruction expert hired by Ford, prepared a Vehicle Accident Reconstruction Report (Doc. 86-6) in this case.[7] Moore opined that there were "[n]o mechanical or electronic defects" in the Escape at the time of the accident. (Doc. 86-6 at 12). He even concluded that the front airbags were not expected to deploy in the accident because there was no front crash. (Doc. 86-3 at 5, 10). He stated, "[f]rontal airbags are designed to deploy in certain impacts that produce a sufficient forward deceleration, associated with crush damage to the front of the vehicle. No frontal crush damage was observed on the Ford, and no source of front-to-rear impact force was found." (Doc. 86-6 at 11). He also noted, "[n]o evidence was found to indicate that the airbag system performed improperly." (Doc. 86-6 at 11). To reach these findings and

---

[6] Because the Court's subject matter jurisdiction is based on diversity of citizenship, Florida law governs the merits of Zaccone's claims. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

[7] Zaccone moved to strike Moore's report on grounds of bias. The Court, in a separate order, denied that motion.

9

conclusions, Moore inspected the Escape; reviewed Zaccone's Third Amended Complaint, deposition testimony and discovery responses; reviewed the Florida Highway Patrol's photographs, measurements, and diagram of the accident; and reviewed design and engineering information related to the Ford Escape, the owner's manual for the Ford Escape, and Zaccone's allegations. (Doc. 86-3). Against this evidence, Zaccone is not entitled to an inference that the Escape was defective.

Even if Zaccone had the *Cassisi* inference, that "only obviates [his] need to prove a defect; [he] still bears the burden to show that the defect caused his injuries." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005). But Zaccone testified that he has no medical evidence that the alleged defects caused his injuries:

> Q   Did any physician talk to you about how your injuries occurred?
> A   No.
> Q   Did any of the physicians talk to you about whether an airbag would have made a difference for any of your injuries?
> A   No.
> Q   And has any physician ever told you that an airbag would have made a difference for any of your injures?
> A   No.

(Doc. 86-5 at 37, 140:20-141:5). At bottom, Zaccone is unable to show that had the front airbags deployed, his injuries would have not occurred or would have been lessened.

One last point on the undisputed evidence – the Escape only had front airbags, and not the optional side airbags and curtain airbags that deploy in certain rollover accidents. (Doc. 86-6 at 5-11). And the Escape's user manual addresses the airbag supplemental restraint system ("SRS"):

> The airbag SRS is designed to activate when the vehicle sustains a longitudinal deceleration sufficient to cause the airbag sensors to close an electrical circuit that initiates airbag inflation. The fact that the airbags did not inflate in a collision does not mean that something is wrong with the system. Rather, it means the forces were not sufficient enough to cause

10

activation. Front airbags are designed to inflate in frontal and near-frontal collisions, not rollover, side-impact, or rear-impacts unless the collision causes sufficient longitudinal deceleration.

(Doc. 96-2). Although not dispositive on its own, this evidence further shows that Zaccone will be unable to prove his case at trial.

In conclusion, Zaccone has neither shown any defect in the Escape nor produced competent evidence of how that alleged defect, and any associated failure to warn, proximately caused his injuries. The Court, therefore, finds that Ford is entitled to summary judgment.

Accordingly, it is now

**ORDERED:**

(1) Defendant Ford Motor Company's Motion for Final Summary Judgment (Doc. 86) and Amended Motion for Final Summary Judgment (Doc. 92) are **GRANTED**.

(2) The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of April, 2017.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record